# Dickerson *v.* Carroll.

76   377
101   403
76   377
116   506

*Bill in Equity to enforce Vendor's Lien on Lands.*

1. *Parol trusts in lands; statutory protection against, to purchasers and creditors.*—Under the statute for the protection of purchasers and creditors against parol trusts in lands of which they have no notice (Code, § 2200), as judicially construed by this court, while creditors are placed on the same footing as purchasers, the protection of the statute is only extended to judgment creditors who have acquired a lien; and a creditor who has recovered a judgment before a justice of the peace, and had his execution levied on land in default of personal property, but receives notice of such trust before he procures an order for the sale of the lands, and then becomes the purchaser at the sale under his execution, is not entitled to the protection of the statute.

2. *Vendor's lien; against whom asserted.*—A vendor's lien on land for unpaid purchase-money, where he has executed a conveyance to the purchaser, reciting therein the payment of the purchase-money, is a parol trust in lands arising by implication of law, within the meaning of the statute declaring such trusts void as against purchasers and creditors without notice (Code, § 2200); and it must prevail against the claim of a creditor who, having recovered a judgment before a justice of the peace, and had his execution levied on land in default of personal property, receives notice of the lien before he obtains an order for the sale of the lands, and afterwards purchases at his own sale.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 21st December, 1882, by Mrs. Sarah F. Dickerson, against William H. Carroll; and sought to enforce a vendor's lien on a house and lot in Greenville, which the complainant had sold and conveyed to said Carroll. The contract was made, and the conveyance executed, on the 10th May, 1880; and Carroll was put in possession of the property. The agreed price was $500, which was to be paid in cash, but was in fact never paid; and no note or security was taken for it. The conveyance recited the payment of the purchase-money in full, and contained covenants of warranty. Carroll made no defense, and a decree *pro confesso* was regularly entered against him. An amended bill was filed, bringing in R. H. Higgins as a party defendant, who claimed to have bought the house and lot, at a sale made by the sheriff on the 5th March, 1883 (after the filing of the original bill), under orders of sale granted by the Circuit Court, which were founded on the levies of executions issued on judgments rendered by a justice of the peace against said Carroll. An answer was filed by said Higgins, asserting his claim, and

[Dickerson v. Carroll.]

stating the facts on which it was founded. By agreement entered of record, the facts relating to his claim were admitted, and the pleadings were amended so as to state those facts. According to these agreed facts, said Higgins recovered several judgments before a justice of the peace against Carroll, and had executions thereon levied on said house and lot, in default of personal property; and he then made a motion in the Circuit Court, for an order to sell the lands. This motion was resisted by said Carroll, who claimed the house and lot as a homestead exemption, and the order of sale was not granted until the 15th January, 1883. In December, 1882, while said motion was pending, the complainant gave said Higgins written notice of her lien for the unpaid purchase-money, and at once filed her bill in this case; and at the sheriff's sale in March, 1883, at which said Higgins became the purchaser, she gave public notice of her lien. It was admitted that said Higgins had no notice of her lien prior to December 10th, 1882, and that she had no notice, prior to that time, of his judgments and executions.

On these facts, the chancellor dismissed the bill, holding that Higgins was entitled to protection against the alleged lien, because he had no notice of it until after the levy of his several executions. The complainant appeals from this decree, and here assigns it as error.

' J. F. STALLINGS, for appellant, cited *Shorter v. Frazer*, 64 Ala. 74; *Donald & Co. v. Hewitt*, 33 Ala. 534; *Whitworth v. Gaugain*, 3 Hare, 416; *Kirkstend v. Avery*, 4 Paige, 10; 2 Story's Equity, § 1228; 2 Madd. Ch. §§ 105, 106; 4 Kent's Com. 154, 172; *Fletcher v. Morey*, 2 Story, 555; 17 How. U. S. 584; 7 Wallace, 205; *Ellis v. Tousley*, 1 Paige, 280; *White v. Carpenter*, 2 Paige, 217; 29 N. Y. 598; 45 N. Y. 379; 1 Ohio, 112; *Manley v. Hunt,* 1 Ohio, 257; *Norton v. Brewer*, 5 Ohio, 188; 18 Ohio, 568; *Hoagland v. Latourette*, 1 Green's Ch. 254; *Everett v. Stone*, 3 Story, 447; *Jackson v. Town*, 4 Cowen, 599; *Jackson v. Post*, 9 Cowen, 120; 4 Johns. 216; 1 Barr, 493; 4 Casey, 430; 15 Ark. 79, 95; 32 Vermont, 97; 33 *Ib.* 252; 45 Geo. 205; 6 Paige, 310; 2 Barb. Ch. 338; 12 Wall. 150; 1 Peters, 384, 444; 3 Casey, 504; 3 Kernan, 180; 57 Barb. 224.

BUELL & LANE, *contra.*—A vendor's lien on land is an implied trust, or a trust arising by operation of law.—2 Story's Equity, §§ 789, 1195, 1215, 1217, 1219; Perry on Trusts, §§ 232–4, note 6; *Champion v. Brown*, 6 Johns. Ch. 403; *Houston v. Stanton*, 11 Ala. 422; *Bankhead v. Owen*, 60 Ala. 465; *Wimbish v. B. & L. Association*, 69 Ala. 578. By virtue

[Dickerson v. Carroll.]

of the statute (Code, § 2200), Higgins is entitled to protection against this lien or trust, of which he had no notice until after the levy of his executions.—*Preston & Stetson v. McMillan,* 58 Ala. 84 ; *Walker v. Elledge,* 65 Ala. 51 ; *Houston v. Stanton,* 11 Ala. 422.

STONE, C. J.—In *Preston v. McMillan,* 58 Ala. 84, we construed section 2200 of the Code of 1876, and held that, as against trusts, whether implied by law, or declared by the parties, creditors were placed on the same footing as purchasers for a valuable consideration without notice.   We held further, that, to come within this principle, the creditor must have reduced his claim to a judgment, and established a lien by placing execution in the hands of the sheriff,—all before notice of the equity.   We conceded this was an innovation on the law, as existing before that statute was enacted.   We were aware that, in the absence of that statutory provision, mere creditors, as such, were not purchasers, within the principle which protects the latter against trusts implied by law.   We were, also, aware that, as a rule, purchasers at execution sale take, as against implied trusts, only such title as belonged to the debtor, with all incumbrances thereon.—2 Leading Cases in Equity, 1st Part, 89, *et seq.*; Story's Equity, § 1503 *b; Lappington v. Oeschli,* 49 Mo. 244.   See, also, authorities on appellant's brief ; *Sieman v. Schenck,* 29 N. Y. 598.

There are cases in which a purchaser at execution sale can tack on to his title the lien of the execution creditor, against an intervening incumbrancer.   This is the means by which such execution, or lien creditor, can make his prior right available.   He succeeds by his purchase, not to any newly acquired equity against the outside incumbrances.   He only acquires the lien and right of the execution creditor, which dominates the incumbrancer's claim ; and tacking it to the title acquired by his purchase, perfects it.—*Daniel v. Sorrells,* 9 Ala. 436 ; *Jordan v. Mead,* 12 Ala. 247 ; *Governor v. Davis,* 20 Ala. 366 ; *De Vendell v. Hamilton,* 27 Ala. 156.   These authorities do not affect the present case.

In *Walker v. Elledge,* 65 Ala. 51, we re-affirmed the doctrine of *Preston v. McMillan.*

There is no dispute, in this case, that Mrs. Dickerson has a vendor's lien, unless Higgins acquired a paramount lien and equity, after the right of Mrs. Dickerson attached.   The land in controversy was sold and conveyed by her to Carroll, but the deed was not recorded, and no part of the purchase-money has been paid.   Higgins recovered judgments against Carroll, before a justice of the peace, and executions were issued thereon, which, for want of personal property, were levied on the lands.

[Dickerson v. Carroll.]

The papers in the causes were all returned up to the Circuit Court, and motions were there made for an order to sell the lands, but had not been acted on. All the proceedings, up to this point, were in strict conformity with the statute.—Code of 1876, § 3638, *et seq.* Up to this time, Higgins had no notice of Mrs. Dickerson's claim and lien; but he received such notice before the orders of sale were granted. She immediately had this bill filed. Subsequently, Higgins obtained the orders of sale; the lands were sold by the sheriff, and Higgins became the purchaser, receiving the sheriff's deed. Is this an answer to Mrs. Dickerson's claim and suit? We think not, for the following reasons: Section 2200 of the Code was an innovation on the law, as heretofore understood. In the absence of that section, Mrs. Dickerson's lien would prevail over that of a creditor, no matter in what form he presented his claim. That statute is creative, and must not be interpreted beyond its terms. In *Preston v. McMillan,* we interpreted the word *creditor* in this statute to mean a judgment creditor having a lien. Neither a justice's judgment, nor an execution thereon, is a lien on lands, nor can lands be sold under such execution, without more. It can not be even levied on lands, without a previous indorsement that there is insufficient personal property known to the constable. We can not think that a constable's levy on lands, before order of sale granted, constitutes the plaintiff in such recovery a judgment creditor having a lien, within the meaning of section 2200 of the Code, as interpreted by us.—*Preston v. McMillan, supra.* It is doubtless true, that where the proceedings are regular, and the court grants an order of sale, this, as between the parties, has relation back to the time of the levy, and establishes the lien as of that time. Such lien would dominate all mere liens and rights acquired subsequent to the levy. But the doctrine of relation is never applied, so as to cut off an equity, otherwise valid.—*Chapman v. Fields,* 70 Ala. 403; Freeman on Judgments, §§ 66, 369.

The decree of the chancellor is reversed, and a decree here rendered, declaring that the complainant is entitled to relief. It is referred to the register to take an account, showing the amount of indebtedness from Carroll to the complainant, with interest to the next term of the Chancery Court, to which term he will make his report. All other questions are reserved for the chancellor's action.

Reversed, rendered in part, and remanded.